**Entered on Docket**
**October 30, 2008**
**GLORIA L. FRANKLIN, CLERK**
**U.S BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**



**The following constitutes**
**the order of the court. Signed October 29, 2008**

Marilyn Morgan

**Marilyn Morgan**
**U.S. Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re CEDAR FUNDING, INC., | Case No. 08-52709-MM |
| Debtor. | Chapter 11 |
| LARRY W. ROLLINS and MARIE P. ROLLINS, individually and as Trustees of the ROLLINS 2002 FAMILY TRUST, dated July 1, 2002, DOUGLAS N. FORZANI and SHIRLEY J. FORZANI, individually and as Trustees of the FORZANI 1994 REVOCABLE FAMILY TRUST, dated October 26, 2004, | Adversary No. 08-5155 |
| | **OPINION & ORDER ON THE CHAPTER 11 TRUSTEE'S MOTION TO DISMISS COMPLAINT PURSUANT TO F.R.C.P. 12(b)(6)** |
| Plaintiffs, | |
| vs. | |
| R. TODD NEILSON, Trustee for Debtor, CEDAR FUNDING, INC., | |
| Defendant. | |

## INTRODUCTION

In this adversary proceeding, one of the primary pillars of bankruptcy law, ratable distribution, must be reconciled with a competing state law principle that authorizes courts of equity to impose an

equitable lien against property where substantial justice calls for it. On one hand, ratable distribution places "all property of the bankrupt, wherever it is, under the control of the court for equal distribution among creditors." *In re Visiting Home Services, Inc.*, 643 F.2d 1356, 1360 (9th Cir. 1981), *citing*, *Straton v. New*, 283 U.S. 318, 51 S. Ct. 465 (1930). On the other, plaintiffs' complaint seeks a judicial declaration that plaintiffs have an equitable or legal lien to secure repayment of their $445,000 investment with debtor, Cedar Funding, Inc. If successful, plaintiffs would be entitled to pursue their remedies against assets subject to the lien, making the assets unavailable for distribution to Cedar Funding's other creditors.

## ALLEGATIONS OF THE COMPLAINT

Cedar Funding began operating as a mortgage brokerage business in 2003. While in business, Cedar Funding originated and serviced mortgage loans, which, in large part, were funded by individual investors who received fractionalized interests in notes and deeds of trust to secure their investments. Cedar Funding's president and sole shareholder was David Nilsen, a licensed real estate broker who serviced the loans.

In January 2005, plaintiffs, the trustees of two family trusts, invested with Cedar Funding. In addition to funds provided by a third, non-party trust, each plaintiff trust provided $122,500 to fund a $300,000 mortgage loan from Cedar Funding to Vincent R. Larocca. The loan was secured by a second deed of trust in favor of Cedar Funding against Larocca's property located at 414 Alvarado in Monterey, California. At the time of their investment, the plaintiff trusts received a package of documents including copies of: Acceptance Letters and a Lender Identification, a Loan Servicing Agreement, a Lender/Purchaser Disclosure Statement, a Promissory Note from Larocca to Cedar Funding, a Second

2

Deed of Trust in favor of Cedar Funding, a Certificate of Property Insurance, a Borrowers' Certification and Authorization, Larocca's Uniform Lender Loan Application, a title report on the property and an appraisal of the property. Further reflecting their fractional investment, the plaintiffs also received an unsigned Promissory Note Endorsement as well as an unsigned Assignment of Deed of Trust from Cedar Funding to plaintiffs. Nilsen promised plaintiffs that Cedar Funding would execute the note endorsement and record the deed of trust assignment sometime following the funding of the loan to Larocca. The original second deed of trust in favor of Cedar Funding was recorded with the Monterey County Recorder on February 1, 2005.

In early June 2005, Cedar Funding asked plaintiffs to increase their investment in the Larocca loan by $100,000, with each trust advancing one half of that amount. Plaintiffs agreed and, in return, they received copies of a Modification to the Promissory Note that Larocca executed in favor of Cedar Funding, and of a Notice of Advance under Deed of Trust that had been recorded and reflected the additional $100,000 advance from Cedar Funding to Larocca. Plaintiffs also received letters accepting their additional investments along with new Lender Servicing Agreements and Lender/Purchaser Disclosure Statements. Sometime later, Cedar Funding also sent plaintiffs revised Lender Identifications, as well as new, but still unsigned, Promissory Note Endorsements and Assignments of Deed of Trust.

In September 2005, Larocca requested an additional advance on his loan to bring it to a total of $600,000. Plaintiff Forzani responded by individually placing an additional $50,000 with Cedar Funding as well as another $50,000 on behalf of his sister, Joanne Forzani. As in June, Forzani received copies of a Modification of the Promissory Note in favor of Cedar Funding, a recorded Notice of Advance under Deed of Trust, as well as a Loan Servicing Agreement and Disclosure Statement

3

reflecting the Forzanis' additional investment in the Larocca note and deed of trust. Again, the copies of the Promissory Note Endorsement and the Assignment of Deed of Trust that Forzani received were not executed.

More than two years later, in May 2008, plaintiffs received a copy of a recorded Assignment of Deed of Trust in connection with the Larocca loan, which reflected each plaintiff's then current percentage interests in the second deed of trust commensurate with each of their investment totals. Although the plaintiffs believed the assignment had been recorded years before, the document reflected that it was recorded on May 16, 2008.

## BACKGROUND

On May 26, 2008, Cedar Funding filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. Shortly thereafter, several creditors requested the appointment of a chapter 11 trustee to administer Cedar Funding's estate. Within a week of the creditors' request, the United States Trustee filed its own motion for appointment of a trustee. The court granted the requests, and the United States Trustee appointed defendant, R. Todd Nielson, as the trustee.

On June 18, 2008, plaintiffs filed this adversary proceeding requesting a judicial declaration that they have either an equitable or a legal interest in the Larocca note and the second deed of trust securing repayment of the note to the full extent of the funds that plaintiffs invested with Cedar Funding. Regardless of the basis for their lien, plaintiffs further ask this court to declare that their interest is not subject to avoidance as a preferential transfer under § 547(b) of the Bankruptcy Code. Nielson moves to dismiss plaintiffs' complaint for failure to state a claim upon which relief can be granted.

4

**DISCUSSION**

**I.     The Allegations of the Complaint Set Forth a Plausible Basis for the Imposition of an Equitable Lien.**

By their request for recognition of their interest in the Larocca note and deed of trust, plaintiffs ask the court to impose an equitable lien in their favor, giving them the status of a lienholder and allowing them to pursue their remedies against the Larocca property in satisfaction of the amounts owed to them.  Equitable liens are closely related to constructive trusts.   *Holder v. Williams*, 167 Cal. App. 2d 313, 315 (1959).  Like a constructive trust, an equitable lien is a remedy forged by courts of equity where necessary to accomplish substantial justice.  *Id.* at 317.  Due to their remedial nature, neither a constructive trust nor an equitable lien exists until a judicial determination establishes it.   Once established, however, both remedies relate back in time to the conduct on which they are founded.  *Hise v. Superior Court of Los Angeles County*, 21 Cal. 2d 614, 627 (1943); *Burns v. Peters*, 5 Cal. 2d 619, 625 (1936).

The Ninth Circuit has acknowledged, specifically with respect to constructive trusts, that bankruptcy courts should use their equitable power sparingly:

> A constructive trust is . . . a remedy, flexibly fashioned in equity to provide relief where a balancing of interests in the context of a particular case seems to call for it . . . .  We necessarily act very cautiously in exercising such a relatively undefined equitable power in favor of one group of potential creditors at the expense of other creditors, for ratable distribution among all creditors is one of the strongest policies behind the bankruptcy laws.

*In re North American Coin & Currency, Ltd.*, 767 F.2d 1573, 1575 (9th Cir. 1985)(citations omitted). Due to the similarities between constructive trusts and equitable liens, courts should also be circumspect in their recognition of equitable liens.  While this court may have the ability to impose such a lien, *Grappo v. Coventry Financial Corp.*, 235 Cal. App. 3d 496, 509 (1991)(collecting examples of

5

circumstances warranting the imposition of an equitable lien), that power must be exercised in a manner that is consistent with policies of the bankruptcy laws. *North American Coin*, 767 F.2d at 1575. As a result, plaintiffs are likely to face an uphill battle in their attempt to obtain an equitable lien that will provide them with a recovery that is greater than a general unsecured creditor would receive.

Despite the difficult road ahead, to survive dismissal, plaintiffs' complaint need only contain "enough facts to state a claim to relief that is plausible on its face. *Bell Atlantic Corp. v. Twombly*, __ U.S. __, 127 S. Ct. 1955, 1974 (2007). While this standard shifts away from the long familiar rule that a complaint should not be dismissed unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief," *see Conley v. Gibson*, 355 U.S. 4147, 78 S. Ct. 99 (1957), it continues to be a liberal standard that only requires enough factual allegations to raise a right to relief above the speculative level. *See, e.g., Mendiondo v. Centinela Hosp. Medical Center*, 521 F.3d 1097, 1103-04 (9th Cir. 2008); *Alvarez v. Hill*, 518 F.3d 1152, 1157 (9th Cir. 2008); *Skaff v. Meridien North America Beverly Hills, LLC*, 506 F.3d 832, 839-42 (9th Cir. 2007). Moreover, on a motion to dismiss, the allegations of the complaint must be accepted as true, and all reasonable inferences from those allegations are construed in plaintiff's favor. *Jenkins v. McKeithen*, 395 U.S. 411, 421-22, 89 S. Ct. 1843, 1848-49 (1969); *Bernhardt v. County of Los Angeles*, 279 F.3d 862, 867 (9th Cir. 2002).

Under these standards, it is enough if the complaint alleges facts plausibly suggesting that plaintiffs and Cedar Funding intended to create a lien in plaintiffs' favor, but for some reason failed to do so, or that Cedar Funding would be unjustly enriched absent imposition of a lien. California law recognizes equitable liens in both sets of circumstances. *Clayton Development Co., Inc. v. Falvey*, 206 Cal. App. 3d 438, 443-44 (1988)(defective mortgage); *Jones v. Sacramento Savings & Loan Assn.*, 248 Cal. App. 2d 522, 529-31 (1967)(unjust enrichment). It is particularly likely that an equitable lien will

be recognized when "money has been borrowed or other obligation incurred on the faith of it." *Destro v. Stuhley*, 675 F.2d 1037, 1039 (9th Cir. 1981). The complaint satisfies these criteria. It alleges that, in return for their money, plaintiffs received an endorsement of promissory note and an assignment of deed of trust from Cedar Funding to plaintiffs. These are just the type of documents that would have created a lien in plaintiffs' favor if the transaction had been properly completed. Although the copies given to the plaintiffs were unsigned, Nilsen assured plaintiffs that the papers would be executed and recorded shortly after the Larocca loan was actually funded. Accepted as true, these facts provide a believable basis for concluding that each time plaintiffs invested money with Cedar Funding, it was the intent of all the parties to assign a portion of the original note and the related second deed of trust to plaintiffs. Further, plaintiffs advanced funds with the understanding that a security interest was intended. That intent to use the Larocca property to secure repayment, when viewed in light of all the circumstances that are yet to be discovered, may or may not warrant the award of an equitable lien in plaintiffs' favor. It is, however, sufficient to avoid dismissal.

I am not persuaded that the May 16, 2008 recording of Cedar Funding's assignments of the second deed of trust precludes plaintiffs from asserting an equitable lien in addition to, or in lieu of, the perfected assignment. The trustee urges that upon perfection of the plaintiffs' legal interest, there was no longer any basis or reason for asserting an equitable lien. I disagree. Once recognized, an equitable lien is effective back to the time of the transaction or conduct that created it. *Hise*, 21 Cal. 2d at 627. Although unrecorded, it has priority over the liens of subsequent attaching creditors or judgment creditors. *Burns*, 5 Cal. 2d at 625. If there are intervening liens, the holder of a perfected legal lien also may want to assert an equitable lien to reach back further into time to establish priority. Equity may prevent the merger of the two interests just as it prevents merger of a lesser estate into a greater estate

7

if there is evidence that the holder of the two estates did not intend a merger. *Sheldon v. La Brea Materials Co.*, 216 Cal. 686, 691 (1932). Where it would be to the holder's advantage, intent not to merge is presumed. *Id.*; *Investcal Realty Corp. v. Edgar H. Mueller Constr. Co*, 247 Cal. App. 2d 190, 195-96 (1966).

The trustee's sole authority for his merger argument, *Marriage of Miller*, 133 Cal. App. 3d 988, 991 (1982), involves very different circumstances. There, a buyer had an equitable right to compel transfer of title in accordance with a land sale contract, but that right was extinguished once the sale closed and legal title was in fact transferred to the buyer. Because there was no reason to retain a right to compel transfer of title once that transfer had already occurred, it made sense to recognize a merger of the equitable right into the legal title.

The complaint's factual allegations reasonably suggest that plaintiffs have a basis to assert an equitable interest in the Larocca note and deed of trust separate and apart from any interest that arose upon recordation of the assignment. Dismissal is not appropriate based on the merger of those interests.

## II.  The Allegations Of The Complaint Plausibly Suggest That Plaintiffs' Alleged Equitable Interest May Not Be An Avoidable Preference.

Under § 547(b) of the Code, the trustee may avoid certain pre-bankruptcy transfers of a debtor's interest in property to prevent preferential treatment of the creditor that received the transfer. If avoided, the property, or its value, is returned to the debtor's bankruptcy estate for distribution as dictated by the Code. In this way, the preference provisions promote the Code's overall policy of equal distribution among all creditors. To be avoidable as a preference, a pre-petition transfer "must involve property of the debtor such that the transfer diminishes the fund from which similarly situated creditors may be paid." *Sierra Steel, Inc. v. S&S Steel Fabrication (In re Sierra Steel, Inc.)*, 96 B.R. 271, 273 (9th Cir. B.A.P.

8

1989). According to the complaint, Cedar Funding, at most, held bare legal title to the Larocca note and deed of trust during the ninety day preference period. As a result, plaintiffs' allegations raise a reasonable inference that their equitable interest in the Larocca note and deed of trust did not become property of the estate pursuant to § 541(d). Under § 541(d), property in which a debtor holds only legal title and not an equitable interest only becomes property of the estate under § 541(a)(1) or (2) to the extent of debtor's legal title, but not to the extent of any equitable interest. Even if the trustee is able to avoid the transfer of the legal interest and bring it back into the estate, § 541(d) indicates that any equitable lien would not become property of the estate.

The trustee urges that Nilsen used Cedar Funding to run a classic Ponzi scheme operation where newly invested funds propped up non-performing loans by funding interest payments to existing investors. Because this wrongful scheme affected many creditors, the trustee asserts that it would be unfair to apply § 541(d) and allow plaintiffs to recover against the Larocca property to the detriment of other creditors. Regardless of its potential merit, this argument is procedurally flawed. The existence of a Ponzi scheme is not within the realm of facts alleged in the complaint, and on this motion to dismiss, I cannot consider matters outside of that pleading. More importantly, however, the trustee's sole citation of authority makes it plain that the courts must look to the intent of the parties and the totality of the circumstances surrounding the transaction to determine whether § 541(d) will prevent equitable interests from becoming property of the estate. *Corporate Financing, Inc. v. Fidelity Nat'l Title Insur. Co. of New York (In re Corporate Financing, Inc.)*, 221 B.R. 671 (Bankr. E.D.N.Y.1998). *See also, Ryan v. Zinker (In re Sprint Mortgage Bankers Corp)*, 164 B.R. 224, 228-29 (Bankr. E.D.N.Y. 1994)(before applying § 541(d) to exclude an equitable mortgage interest from an estate, court must first determine whether transaction is a true mortgage participation and whether other factors, like a failure to segregate accounts,

Case: 08-05155   Doc# 21   Filed: 10/29/08   Entered: 10/30/08 14:46:08   Page 9 of 14

preclude identification of funds to be protected); *Ables v. Major Funding Corp. (In re Major Funding Corp.)*, 82 B.R. 443, 448-449 (Bankr. S.D. Tex. 1987)(§ 541(d) creates presumption that broker retains legal title only, but presumption is rebuttable based on evidence of bad business practices or fraud); *Lemons & Associates, Inc. v. Boone (In re Lemons & Associates, Inc.)*, 67 B.R. 198, 210-11 (Bankr. D. Nev. 1986)(with respect to mortgage participations, § 541(d) creates trust-like relationship between broker and investors which may be disregarded when bad business practices or fraud precludes proper identification of the trust res); *Colin v. Fidelity Standard Mortgage Corp. (In re Fidelity Standard Mortgage Corp.)*, 36 B.R. 496, 500 (Bankr. S. D. Fla. 1983)(court should consider whether mortgage assignment is merely an attempt to defraud the investor or has other purpose outside of the necessities of the secondary mortgage market). Here, the mortgage investment transaction described in the complaint creates a reasonable inference that the plaintiffs' equitable interests may be protected by § 541(d). That inference is enough to raise plaintiffs' claim for relief above the speculative level.

If it is determined that plaintiffs' equitable interests should be considered part of Cedar Funding's estate, a question will remain as to whether the transfer of the equitable interests took place during the preference period. The Bankruptcy Code expressly governs when a transfer of property occurs for preference purposes. It provides that a transfer is made:

> (A) at the time such transfer takes effect between the transferor and the transferee, if such transfer is perfected at, or within 30 days after, such time;
> (B) at the time such transfer is perfected, if such transfer is perfected after such 30 days.

11 U.S.C. § 547(e)(2)(A) and (B). The time of perfection depends on whether the transfer involves real property or not. A transfer of real property is perfected when "a bona fide purchaser of the property cannot acquire an interest that is superior to the interest of the transferee." *Id.* at § 547(e)(1)(A). However a transfer of property other than real property is perfected when "a creditor on a simple contract

10

cannot acquire a judicial lien that is superior to the interest of the transferee." *Id.* at § 547(e)(1)(B). The most favorable outcome for the plaintiffs, and one that is consistent with the allegations of the complaint, is that plaintiffs purchased a participation interest in the Larocca note and deed of trust. One court has held that the acquisition of a participation ownership interest in a note secured by a deed of trust via the secondary mortgage market is not a real property interest. *See In re Columbia Pacific Mortgage, Inc.*, 20 B.R. 259, 261 (Bankr. W.D. Wash. 1981)(participation interest is not a real property interest subject to attack by the trustee as a bona fide purchaser under § 544(a)(3)). Under that scenario, then, the transfer of plaintiffs' equitable lien would have occurred back at the time that the lien is deemed to take effect. *Burns*, 5 Cal. 2d at 625 (although not recorded, equitable lien takes priority over subsequent attaching creditors or judgment creditors). However, as discussed above, the courts carefully consider the totality of the circumstances to determine whether a true participation interest is at issue or whether the substance of the transaction is more correctly characterized as a loan with a security interest. While an evaluation of all the circumstances will have to await discovery, dismissal is inappropriate because there is a plausible basis for concluding that plaintiffs' equitable interest may not be avoidable.

**III.    The Allegations Of The Complaint Describe Circumstances Which Could Plausibly Lead To A Finding That The Recorded Assignment Of The Second Deed Of Trust Was Part Of A Contemporaneous Exchange For New Value.**

    If no equitable interest in the Larocca note and deed of trust is found to exist, plaintiffs alternatively seek a declaration that the May 18, 2008 recording of Cedar Funding's assignment of the second deed of trust, which reflects the plaintiffs' fractionalized interest, is exempt from avoidance as a preference. Plaintiffs contend that they exchanged their previously existing equitable interest in the Larocca note and deed of trust for the legal interest that was perfected on May 18, 2008 and that the

11

exchange constitutes a substantially contemporaneous exchange for new value given to the debtor within the meaning of Code § 547(c)(1). The trustee responds that plaintiffs' contemporaneous exchange theory fails as a matter of law because the complaint establishes that plaintiffs were unaware that they had an equitable interest until after the transfer of legal interest had been completed. Without knowledge, plaintiffs could not have had the requisite intent to engage in a contemporaneous exchange for new value.

While the trustee is correct that intent to exchange for new value is a necessary element of a § 547(c)(1) exemption from avoidance, *McClendon v. Cal-Wood Door (In re Wadsworth Bldg. Components, Inc.)*, 711 F.2d 122, 124 (9th Cir. 1983), it is at least plausible, under the facts alleged, that plaintiffs did intend such an exchange. Under California law, holders of a security interest need not accept a recorded deed in their favor. Cal. Civ. Code § 1058.5 (setting out requirements for nonacceptance of a recorded deed). Thus, one reasonable inference from plaintiffs' receipt and acceptance of the recorded demand is that they decided, and therefore intended, to exchange their pre-existing equitable interest for the legal interest that was sent to them in late May 2008. That inference is enough to raise plaintiffs' right to relief above the speculative level. As a result, their request for a determination that the recorded assignment is exempt from preferential treatment survives dismissal.

**CONCLUSION**

Although plaintiffs' complaint has survived dismissal, plaintiffs are forewarned that they have embarked on a demanding course. To obtain an equitable lien, they will initially need to establish that it was the intent of all parties to create a lien or that the imposition of a lien is necessary to prevent the unjust enrichment of Cedar Funding. But, even if they clear that hurdle, they will have to demonstrate that the imposition of a lien is consistent with the principles of ratable distribution and that the lien

12

interest would not be preferential. Both of those determinations will turn on the totality of the circumstances and will raise issues regarding the traceability of plaintiffs' investment and whether widespread fraud precludes the recognition of a lien in favor of a particular creditor. Finally, to show that any acceptance of the May 2008 recorded assignment was not a preferential transfer, plaintiffs will have to offer proof not only that they intended to exchange an equitable lien for a recorded lien, but also that Cedar Funding intended such an exchange.

The prominence of issues surrounding intent and fairness, as well as the competing policies behind the equitable relief requested and the principles of ratable distribution make it plain that this will be a difficult case. Nevertheless, based on the foregoing, the court concludes that the trustee's motion to dismiss complaint pursuant to F.R.C.P. 12(b)(6) is denied.

Good cause appearing, IT IS SO ORDERED.

**** END OF ORDER ****

13

1  Adv. P. 08-5155

2

3

4                **UNITED STATES BANKRUPTCY COURT**

5          **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

6                        <u>**SERVICE LIST**</u>

7

8  Cecily A. Dumas                    Larry J. Lichtenegger, Esq.

9  FRIEDMAN DUMAS & SPRINGWATER LLP   Vincent C. Catania, Esq.
   150 Spear Street, Suite 1600       ATTORNEYS AT LAW
10 San Francisco, CA 94105           3850 Rio Road, #58
                                      Carmel, CA 93923
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28                                    14